U.S. Magistrate Judge David W. Christel

FILED ___ LODGED
___ RECEIVED
MAR 13 2017
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JUAN CARLOS ORTEGA-VALENCIA,
RUBEN DONATE-BONILLA,

Defendants

CASE NO. MJ17-5049

**COMPLAINT**

21 U.S.C. §§ 841(a) & 846

BEFORE, the Honorable David W. Christel, United States Magistrate Judge, United States Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

### COUNT 1

### (Conspiracy to Distribute Controlled Substances)

Beginning at an unknown time, and continuing until on or about March 7, 2017, in Clark County, within the Western District of Washington, and elsewhere, JUAN CARLOS ORTEGA-VALENCIA, RUBEN DONATE-BONILLA, and others known and unknown did knowingly and intentionally conspire to distribute controlled substances controlled under Title 21, United States Code, Section 812, Schedule II, including cocaine.

It is further alleged that the offense involved five-hundred (500) grams or more of a mixture or substance containing a detectable amount of cocaine.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841 (b)(1)(B) and 846.

And the complainant, Eric K. Chin, a Special Agent with the Drug Enforcement Administration, Seattle, Washington, being duly sworn on oath, state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Drug Enforcement Administration (DEA), and have been employed since July, 2016. I am currently assigned to the DEA Seattle Field Division. In this capacity, I investigate violations of the Controlled Substances Act, Title 21, United States Code, Section 801, et seq., and related offenses.

2. I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 720 hours of classroom and field training including but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing and illicit trafficking of controlled substances.

3. Since the start of my employment, I have contributed to numerous narcotics investigations under the direct supervision of senior Special Agents, including investigations involving heroin, cocaine, marijuana, and methamphetamine trafficking. These investigations were carried out with the goal to arrest individuals, seize illicit narcotics and/or narcotics related evidence, and forfeit narcotics related assets. I have also been involved in the execution of search warrants and arrests, and have interviewed drug traffickers and informants with deep knowledge of drug trafficking. Because of these experiences and training received, I am familiar with common methods of

investigating drug trafficking and manufacturing organizations, and have become familiar with the methods of operation of drug traffickers and manufacturers, including their methods of importing, exporting, storing, concealing, and packaging drugs; their methods of transferring and distributing drugs, their use of cellular telephones; their use of numerical codes, code words, and counter surveillance; and other methods of avoiding detection of law enforcement.

4.  I have obtained the facts set forth in this affidavit through oral and written reports of other law enforcement officers; from records, documents and other evidence obtained during this investigation; and from confidential source(s) who are associated with and/or knowledgeable about the subjects of this investigation. I have obtained and read official reports prepared by various law enforcement officers participating in this investigation. I have not included every fact concerning this investigation. This affidavit is intended to show merely that there is a sufficient factual basis for a fair determination of probable cause to support the Complaint. All times listed herein are approximate.

## II.   SUMMARY OF PROBABLE CAUSE

5.  On March 7, 2017, Portland Police Bureau Drugs Vice Division (DVD) and the Clark-Vancouver Regional Drug Task Force (CVRDTF) conducted a narcotics buy and arrest operation utilizing DVD CS1 in the Vancouver, Washington area. The objective of the operation was for CS1 to purchase 2 kilograms of cocaine for $70,000 US currency. The targets of the operation were JUAN CARLOS ORTEGA-VALENCIA[1] and RUBEN DONATE-BONILLA. Through information gained over the course of the investigation and through CS debriefs, RUBEN DONATE-BONILLA was identified as an associate of JUAN CARLOS ORTEGA-VALENCIA whom both had been involved in the distribution of controlled substances in the Seattle areas. Following the successful buy and arrest operation, 2 kilograms of cocaine were seized from RUBEN DONATE-BONILLA. In addition, RUBEN DONATE-BONILLA was arrested for

---

[1] I am aware that ORTEGA-VALENCIA is also the target of another narcotics investigation originating in the Kent PD area that is ongoing.

distribution of cocaine, and JUAN CARLOS ORTEGA-VALENCIA was arrested as a coconspirator assisting RUBEN DONATE-BONILLA facilitate the transaction. Both individuals have been booked into the Clark County Jail on cocaine delivery charges.

6. At the time this complaint is being written, the 2010 Chevrolet Camaro vehicle JUAN CARLOS ORTEGA-VALENCIA and RUBEN DONATE-BONILLA were using to facilitate the narcotics transaction was pending a search warrant.

### III. ARREST AND SEIZURE OF 2 KILOGRAMS OF COCAINE
(Per DVD Case 2017-680245 and CVRDTF Case 22-6181 Reports)

7. During the week of March 1, 2017, DVD CS1[2] was in contact with RUBEN DONATE-BONILLA over the agreed deal to purchase of 2 kilograms of cocaine for $70,000 US currency. RUBEN DONATE-BONILLA was purported to be located in the Seattle area during the time of the deal negotiation and later informed CS1 the deal would be moved to the Portland area.

8. On March 7, 2017, DVD asked CVRDTF for assistance with a narcotics buy and arrest operation planned in the Vancouver, Washington area. The goal of the operation would be the purchase of the aforementioned 2 kilograms of cocaine for $70,000 US currency from JUAN CARLOS ORTEGA-VALENCIA and RUBEN DONATE-BONILLA. Utilizing CS1, the deal with the suspects was agreed to occur at "Las Islas Marias" Mexican restaurant located at 4400 East Fourth Plain Boulevard, Vancouver, Washington. The suspects would be driving a 2010 Chevrolet Camaro.

9. At approximately 2:00 pm, detectives observed a white Chevrolet Camaro with Oregon license plate 505JAU park in a public parking lot next to CS1's vehicle. Det. Kevin Jones and Sgt. McCollister observed a passenger in the white Camaro exit the vehicle and retrieve a large brown paper bag. The passenger then carried the bag to

---

[2] CS1 is a paid Portland Police Bureau Drugs Vice Division informant and has worked with several law enforcement agencies in the past. CS1's motivation for working with law enforcement is to maintain his/her immigration status in the United States. The only criminal history CS1 has is a driving under the influence of intoxicants (DUII) in 1999.

CS1's vehicle and entered the front passenger seat. This passenger was later identified as RUBEN DONATE-BONILLA.

10. Investigators then observed CS1's vehicle exit the parking lot with RUBEN DONATE-BONILLA still in the front passenger seat. JUAN CARLOS ORTEGA-VALENCIA who was later identified as the driver of the white Camaro, followed behind CS1's vehicle in the parking lot. Each vehicle driven by CS1 and JUAN CARLOS ORTEGA-VALENCIA then exited and proceeded to drive towards a public parking lot at 4th Plain Boulevard and Grand Boulevard. While detectives were following the two vehicles, CS1 communicated with Det. Gauger and informed him that RUBEN DONATE-BONILLA had delivered cocaine to CS1. CS1 also told Det. Gauger that he/she wanted the vehicle stopped.

11. Detectives proceeded to stop CS1 and JUAN CARLOS ORTEGA VALENCIA's vehicles and the occupants of both vehicles were taken into custody without incident. Det. Kenny Lutz then asked CS1 for permission to remove the cocaine from the vehicle in which CS1 agreed. Det. Lutz also advised CS1 of his/her Ferrier rights and that any search of his/her vehicle was voluntary. CS1 still agreed to have the cocaine removed.

12. Upon search of CS1's vehicle, Det. Lutz observed a brown paper bag in the passenger's seat of CS1's vehicle. Det. Lutz retrieved the brown paper bag and discovered 3 packages wrapped in plastic along with a red sweatshirt. In addition, Det. Lutz observed, and smelled suspected cocaine in accordance with his training and experience. Det. Lutz opened one of the packages and field tested the cocaine, receiving a positive response.

13. JUAN CARLOS ORTEGA-VALENCIA and RUBEN DONATE-BONILLA were interviewed briefly by Ofc. Shane Hall and advised that they would like to speak with an attorney. Ofc. Hall also advised Det. Lutz that both individuals did not have a driver's license. Of note, both claimed that they could not recall their address or

phone numbers. Both individuals were then transported and booked by Ofc. Hall on delivery of cocaine charges at the Clark County Jail.

14. Det. Lutz interviewed CS1 following the event and CS1 told him that RUBEN DONATE-BONILLA refused to exit his/her vehicle until he saw money for the cocaine delivered. CS1 told Det. Lutz this was the reason he/she called for the vehicle stop. It should be noted that in Special Agent Chin's training and experience, the actions of JUAN CARLOS ORTEGA VALENCIA were facilitating RUBEN DONATE-BONILLA to conduct the transaction as JUAN CARLOS ORTEGA VALENCIA did not simply drop off and pick-up RUBEN DONATE-BONILLA at the deal location, but followed RUBEN-DONATE-BONILLA to provide him protection, as well as protection for the 2 kilograms of cocaine. This action is consistent with narcotics traffickers, and even more so given the high currency value at stake.

15. The white Camaro was sealed at the location of the stop with evidence tape and towed to the CVRDTF secure alarmed facility in preparation for a search warrant. The cocaine was placed into the Clark County evidence system and requested to be tested for cocaine by the Washington State Patrol Crime Lab. Det. Lutz weighed the cocaine at 4.6 pounds (which is more than 500 grams, but less than five kilograms).

## IV. CONCLUSION

16. Based on the facts set forth in this affidavit, and on the experience and knowledge of other agents and officers involved in this investigation, I believe that there is probable cause to conclude that JUAN CARLOS ORTEGA VALENCIA and RUBEN DONATE-BONILLA conspired and is conspiring to distribute illegal drugs in Washington state in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Eric K. Chin, Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN before me this 13TH day of March, 2017.

_____
HONORABLE DAVID W. CHRISTEL
U.S. Magistrate Judge